IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03464-MEH

JOSEPH NIGRO, and
TERRY NIGRO,

    Plaintiffs,

v.

ENCOMPASS INDEMNITY COMPANY,

    Defendant.

---

# ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [filed February 11, 2015; docket #23]. The motion is fully briefed and the Court finds that oral argument will not assist in its adjudication of the motion. Based on the record herein and for the reasons that follow, the Court **denies** the Plaintiffs' motion.

## BACKGROUND

### I. Procedural History

Plaintiffs Joseph and Terry Nigro ("Plaintiffs") initiated this action in Weld County District Court on or about November 25, 2014, alleging essentially that Defendant Encompass Indemnity Company ("Encompass") "refused to complete performance of the settlement agreement" governing the total economic loss of a 1975 Corvette following its collision with road debris on Interstate Highway 76 on August 16, 2014. Complaint, docket #3. Encompass removed the action to this Court on December 23, 2014 asserting the Court's diversity jurisdiction. Docket #1. At the same

time, Encompass filed an Answer to the Complaint asserting 14 affirmative defenses. Docket #4. After the Court granted in part the Plaintiffs' motion to strike certain defenses (docket #27), Encompass filed an Amended Answer on March 4, 2015 (docket #29).

Meanwhile, the Court held a Scheduling Conference on February 5, 2015 at which the Court set deadlines for discovery and the filing of dispositive motions, as well as a date for the Final Pretrial Conference in November 2015. Dockets ## 20, 21. Days later, on February 11, 2015, the Plaintiffs filed the present motion for summary judgment arguing no triable issues exist as to whether Encompass improperly denied or delayed payment of the remaining balance of the total loss settlement agreement. *See* docket #23. Specifically, Plaintiffs contend that the total loss settlement on the Corvette is binding under Colorado contract law; the full dollar amount of the Corvette settlement is the "covered benefit" under Colorado law and Encompass is not entitled to set off the lien payoff against the covered benefit; Encompass waived and forfeited the right to rescind the settlement agreement on any ground but fraud by entering into and performing on the agreement; under the policy terms, Plaintiffs did not have a duty to submit to examinations under oath ("EUO") unless Encompass had reasonable cause to believe fraud had occurred, and Encompass lacked any reasonable cause; and Plaintiffs' refusal to participate in the EUOs constituted a breach of the policy only if the refusal to participate caused a material and substantial disadvantage to Encompass, but Encompass lacks any such disadvantage. *Id.*

Encompass counters that there exist "numerous" genuine issues of material fact regarding Plaintiffs' conduct, whether there is a "covered benefit" under the policy, and whether Encompass had a reasonable basis on which to investigate Plaintiffs' benefit claims. Specifically, Encompass argues Plaintiffs cannot succeed on their statutory claims if there is no "covered benefit" due to

Plaintiffs' own (allegedly) fraudulent conduct, for which there exist triable issues of fact, including:

> Plaintiffs' history of total loss claims involving vehicles with "stated values"; Plaintiffs' significant claim history and pattern of adding/removing vehicles from their policy; Plaintiffs' failure to include Vincent Armstrong as a driver under the policy despite the fact that he was the sole user of the Saturn SW2; Plaintiffs' two total loss claims involving the Corvette and Saturn in less than one month; Plaintiffs' representation that Ms. Nigro was the principal driver of the Saturn SW2; Plaintiffs' attempt to add Vincent Armstrong as the principal driver of the Saturn SW2 after the accident and after Encompass requested his examination under oath; Plaintiffs' failure to produce documents requested during Encompass' claim investigation; Plaintiffs' withdrawal of their Saturn claim; and Plaintiffs' refusal to participate in their examinations under oath.

Response, docket #30 at 13-14. Further, Encompass asserts it can invoke the policy's fraud clause to void coverage even after payment on a claim if its investigation reveals the Plaintiff engaged in fraudulent conduct. Encompass also contends that, assuming the policy requires it to have a reasonable basis on which to demand EUOs, triable issues exist as demonstrated by Plaintiffs' recitation of arguments against Encompass' reasons for the EUOs.

Plaintiffs reply arguing that Encompass disputes only one of their stated facts and the company's cited instances of fraud pre-date its request for EUOs. Further, Plaintiffs contend Encompass' exhibits do not contain the data claimed by Encompass and some contradict each other. Plaintiffs then proceed to dispute certain facts asserted by Encompass: (1) whether the 1991 Firebird was insured for a stated value of $10,000; (2) whether Terry or Vincent was the sole driver of the Saturn; (3) whether Plaintiffs amended their policy in October 2014 to add Vincent as a driver; (4) whether Plaintiffs' claim history evinces a pattern of fraud or misrepresentation; and (5) whether an adjustor's note stating that the Corvette accident "did not occur as stated" is admissible.

**II.     Findings of Fact**

The Court makes the following findings of fact viewed in the light most favorable to

3

Encompass, who is the non-moving party in this matter.

1. On October 14, 2013, Encompass issued the subject Motor Vehicle Insurance Policy No. 0281611212 to the Plaintiffs. Scheduling Order, Undisputed Facts, ¶ 4(1), docket #21. The policy had a one-year term set to expire on October 14, 2014. *Id.*, ¶ 4(2).

2. Policy No. 281611212 includes the following provisions:

> **3. Your Duties After Loss.**
>
> **You** agree to see that the following things are done after a loss. **We** have no duty to provide coverage under this Segment unless there has been full compliance with these duties:
> ...
>
> d. As often as **we** reasonably require:
>
> (2) Provide **us** with records and documents **we** request and permit **us** to make copies; and
>
> (3) Submit to examination under oath, while not in the presence of any other **covered person** and sign the same.
>
> ...
>
> **10. CONCEALMENT OR FRAUD**
>
> **We** do not provide coverage to any **covered person**, who, whether before or after a loss or accident, has:
>
> a. Concealed or misrepresented any material fact or circumstance;
>
> b. Engaged in fraudulent conduct; or
>
> c. Made false statements relating to this insurance; whether as to eligibility or claim entitlement.
>
> ...
>
> **12. LOSS PAYABLE CLAUSE**
> If a Lienholder and/or Lessor is shown on the Coverage Summary, **we** may pay loss or damage under this Segment to **you** and the Lienholder and/or Lessor as its interest may appear.
> ...

> Whenever **we** pay the Lienholder and/or Lessor any sum for loss or damage under this Segment, **we** will be subrogated to the extent of any payment to the rights of the party to whom payment was made. However, these subrogation provisions must in no way impair the rights of the Lienholder and/or Lessor to recover the full amount of its claim from the **covered person**.
>
> The Lienholder and/or Lessor has no greater rights under the provisions of this Segment than the **covered person**.

Encompass Insurance Policy No. 281611212, 10/15/13-10/15/14, Response Exh. A, docket #30-1 (emphasis in original).

3. On July 4, 2014, at the Plaintiffs' request, Beverly Hills Auto Appraisal Service in Denver, Colorado appraised a 1975 Chevrolet Corvette, VIN 1Z67J5S422333 ("Corvette"), for "no less than $26,000." Appraisal Report, July 4, 2014, Motion Exh. 21, docket #23-3.

4. On July 7, 2014, Plaintiffs purchased the Corvette from Purifoy Chevrolet in Fort Lupton, Colorado, for the principal amount of $10,897.50. Scheduling Order, Undisputed Facts, ¶ 4(4); *see also* Motor Vehicle Purchase Agreement, Complaint Exh. 1, docket #1-1 at 7-10.

5. Plaintiffs financed the purchase of the Corvette with the Public Service Credit Union in Denver, Colorado ("PSCU"). PSCU Loan Agreement, Complaint Ex. 3, docket #1-1 at 13; *see also* Scheduling Order, Undisputed Facts, ¶ 4(5), docket #21.

6. On July 7, 2014, Plaintiffs notified Jewell Insurance Associates, Inc., agent for Encompass, of their purchase of the Corvette and the vehicle was added to the Encompass policy as an additional insured vehicle. Encompass CSR Policy History, Motion Exh. 20, docket #23-2.

7. Plaintiffs contend that they insured the Corvette for the stated value of $26,000 based upon the Beverly Hills Auto appraisal.

8. On August 16, 2014, the Colorado State Patrol responded to an incident involving the

Corvette and completed CSP Incident Report, Case No. 1D-14-3366. CSP Report, Complaint Exh. 4, docket #1-1 at 14. In the box labeled "narrative" on the report, the CSP officer noted, "veh[icle] traveling EB on CO76 @ CO287 collided w[ith] road debris causing undercarriage damage. RO [registered owner] provided own tow. Incident report taken per RO's request." *Id.*

9.      Plaintiffs reported the incident to Jewell Insurance Associates, Inc. On August 17, 2014, Encompass acknowledged receipt of Plaintiffs' claim, assigned No. Z9115191 to the claim, and Rita Kakalia was designated as the adjustor. Encompass Letter to Plaintiffs, August 17, 2014, Complaint, Exh. 5, docket #1-1 at 15-16.

10.     On August 25, 2014, Mr. Nigro spoke with an Encompass representative and stated that "an unknown object fell off a truck and [he] swerved to avoid and struck object. [Mr. Nigro] called the police and when they got there, [the] object was gone." Claim File Note, Response Exh. E, docket #30-5. There were no injuries and no witnesses and, at that time, Mr. Nigro "believe[d] his vehicle is a total [loss]." *Id.*

11.     On August 29, 2014, Plaintiffs purchased a 1994 Saturn station wagon, VIN 1G8ZK8579RZ358321, from a private party in the Denver metropolitan area. *See* Certificate of Title, Complaint Exh. 9, docket #1-1 at 28-29. The purchase price on the title shows $0.00. *Id.*

12.     On September 2, 2014, Encompass added the Saturn as an additional vehicle insured under the automobile policy. Encompass CSR Policy History, Motion Exh. 27, docket #23-9.

13.     On September 4, 2014, the Weld County Clerk issued Colorado License Plate No. 451Zll for the Saturn and registered the car in the name of Joseph Nigro. Email from Plaintiffs to Encompass, September 17, 2014, Motion Exh. 28, docket #23-10.

14.     On September 9, 2014, Kathleen Black, Encompass Adjustor, noted that the Corvette was

non-repairable and found "frame damage, suspension damage, and [the] accident may not [have] occurred as insured stated." File Note, Response Exh. G, docket #30-7. Encompass decided to move forward with a total loss evaluation and to "address the fault determination and facts of loss later." *Id.*

15. On September 10, 2014, Ms. Kakalia advised Encompass officials that the Corvette was a total loss and settlement would be made. On that same date, Ms. Black increased reserves on Claim No. Z9115191 "... to $26,000 to be in line with Stated Amount ...." File Notes, Motion Exh. 22, docket #23-4 at 4.

16. On September 11, 2014, by letter to Plaintiffs, Ms. Kakalia declared the Corvette to be a total loss, confirmed the stated insured value as $26,000.00, and proposed a formal total loss settlement in the net amount of $25,500.00. Encompass Letter to Plaintiffs, Complaint Exh. 6, docket #1-1 at 17.

17. Between September 11 and 15, 2014, Plaintiffs provided Ms. Kakalia the documents she requested in the September 11 letter: a Receipt for Title and Registration Application, a Power of Attorney and Bill of Sale, and a Request for Pay-Off to Lienholder. Forms, Motion Exh. 23, docket #24-5.

18. On September 12, 2014, Plaintiffs spoke with Ms. Kakalia and advised her that the required paperwork was being completed. Ms. Kakalia stated to Plaintiffs that Encompass would be sending the settlement payment to Plaintiffs by "...Tuesday of next week ..."; *i.e.*, September 16, 2014. File Notes, Motion Exh. 24, docket #25-6.

19. On September 15, 2014, the Colorado State Patrol investigated a collision involving the Saturn under CSP Case No. 10-14-5142. Colorado State Patrol Traffic Accident Report, Complaint

Exh. 11, docket #1-1 at 32. The Saturn was being driven by Plaintiffs' grandson, Vincent Armstrong, who, while traveling westbound on Interstate 76 at or near the Dahlia Street interchange, collided with the rear end of a semi-tractor trailer truck. *Id.* The report states the Saturn was "towed due to damage by private tow by Bear's Towing." *Id.*

20.     On September 15, 2014, Encompass acknowledged receipt and notice of Plaintiffs' claim for damages to the Saturn resulting from the collision, assigned No. Z9116043 to the claim, and designated Brian Young as the adjustor.   Encompass Letter to Plaintiffs, September 15, 2014, Complaint Exh. 12, docket #1-1 at 33-34.

21.     That same day, Mr. Young noted that he spoke with Mr. Nigro regarding the circumstances of the accident. File Notes, September 15, 2014, Response Exh. H, docket #30-8. According to the notes, Mr. Nigro stated that his "grandson [Vincent Armstrong] was using the [Saturn] for getting to work and school." *Id.* Mr. Young advised Mr. Nigro that the claim would be considered an "at fault loss" and that "Tom" with Encompass would inspect the Saturn. *Id.* Mr. Nigro stated "he thought he had a stated amount of $5,000 on the [Saturn]." *Id.* Mr. Young responded that his file reflected "just [a] regular policy except for the corvette that had stated amt of $26,000." *Id.* Mr. Young advised Mr. Nigro he would need to speak with Mr. Armstrong since he was over 18 years old; Mr. Nigro "understood" and "gave [Young the] contact phone." *Id.*

22.     Vincent Armstrong is the holder of Colorado Driver's License No. 11-327-0871, with a registered residential address of 4585 South Salida St., Aurora, Colorado 80015. Colorado Driver License, Motion Exh. 29, docket #23-11.

23.     Mr. Young then noted that he spoke with Mr. Armstrong on September 15, 2014 about the

accident. File Notes, September 15, 2014, Response Exh. H, docket #30-8. According to the notes, Mr. Armstrong reported that he was the "sole user" of the Saturn and that he used it for "going to school and work." *Id.* At that time, Mr. Armstrong did not reside with Plaintiffs and was not identified as the principal driver of the vehicle on the policy. Auto Loss Notice, Response Exh. F, docket #30-6 at 2.

24. On September 16, 2014, Mr. Young spoke with Ms. Liguori, SIU, advising her that Claim No. Z9116043 (Saturn) needed investigation because:

> a. suspected UW rate evasion: insured purchased the vehicle from this loss for his grandson to use while in school to get to and from work and school, however only added the vehicle and didn't add the young driver to the policy.
>
> b. ni owns a tow company and charing (sic) us for the tow of the IV and outside typical charge.
>
> c. iv purchased recently and now vehicle is a t/loss, similar to prior claims he has had in the past. Has a claim currently z91159l 9l that he recently purchased and is a t/loss. Per field representative Tom Heil, there has (sic) been 4 prior losses in which 3 of the vehicle's (sic) were t/losses as well.

File Notes, September 16, 2014, Motion Exh. 30, docket #23-12; see also File Notes, Response Exh. I, docket #30-9 at 2.

25. On September 17, 2014, Encompass issued a lien payoff to Plaintiffs' lienholder, PSCU, in the amount of $11,184.74 to satisfy the outstanding lien against the Corvette. The check was honored in full. Affidavit of Gloria J. Kane, February 6, 2015, ¶¶ 4, 5, Motion Exh. 25, docket #23-7.

26. On September 17, 2014, Ms. Black erroneously advised PSCU that Encompass was canceling payment of the settlement, including the payoff to PSCU of the Corvette lien. On that same date, Ms. Black, Ms. Kakalia and Janice Liguori, Special Investigations Unit of Encompass

("SIU"), corrected the error by advising PSCU that Encompass would pay off the lien while an investigation continued. Encompass CSR Policy History, Motion Exh. 26, docket #23-8.

27. Beginning on September 17, 2014, and continuing thereafter, Plaintiffs have demanded from Encompass payment of the remaining balance on the total loss settlement. Plaintiffs' email to Encompass, Complaint Exh. 8, docket #1-1 at 24.

28. Ms. Kakalia spoke with Mr. Nigro on September 17, 2014 and "advised we need further investigation." File Notes, Response Exh. I, docket #30-9 at 1.

29. On September 19, 2014, Ms. Liguori directed that Claims Z9116043 and Z9115191 would be henceforth handled by her only for the following reasons:

> "Insd has another t/l claim pending with us. Both cars are new. Both cars purchased in FL. Corvette value is more than double what he paid. Saturn was driven by grandson not on policy. Was it his car or grandson's? Brian was bothered by the tow bill. He towed his own car and overcharged us."

File Notes, Motion Exh. 31, docket #23-13.

30. On September 19, 2014, Mr. Young advised Plaintiffs that the Saturn was a total loss and that the proposed total loss settlement amount was $2,244.90. Young Email to Plaintiffs, Complaint Exh. 13, docket #1-1 at 35.

31. On September 22, 2014, Ms. Liguori referred Claims Z9115911 (Corvette) and Z9116043 (Saturn) to Matthew A. Holmes, Esq., to conduct an examination under oath ("EUO"). File Notes, Motion Exh. 32, docket #23-14.

32. On September 23, 2014, Shawn Hegarty,[1] Plaintiffs' insurance agent, emailed Mr. Young and Ms. Liguori regarding the Saturn claim informing them that Plaintiffs wished to provide

---

[1] The undersigned acknowledges that the name, "Hegarty," is not a common name and notes that he is neither related to nor acquainted with Shawn Hegarty.

additional information, including "Vincent was given permission to drive this vehicle at the time of the accident" and "[t]his car is primarily used by Terry to commute to work and for hauling their 3 dogs and dog kennel (collectively the dogs weigh 350 lbs.)." Hegarty Email to Young/Ligouri, September 23, 2014, Response Exh. J, docket #30-10.  Mr. Hegarty also stated, "They [Plaintiffs] still have no idea why you/Janice are apparently questioning coverage." *Id.*

33. On October 3, 2014, the Colorado Department of Revenue issued a Certificate of Title to Motor Vehicle evidencing Mr. Nigro's ownership of the Saturn.  Certificate of Title, Complaint Exh. 9, docket #1-1 at 28-29.

34. On October 9, 2014, Mr. Holmes issued a letter to Plaintiffs seeking to schedule EUOs of each of the Plaintiffs regarding their claims on the Corvette and the Saturn.  Holmes Letter to Plaintiffs, Complaint Exh. 14, docket #1-1 at 36-38.

35. On October 13, 2014, Ms. Ligouri emailed the Plaintiffs "[i]n response to the questions about [their] claims," saying "until we hold the Examinations Under Oath, we are unable to settle the claims. We need to obtain additional information prior to settling the claims." Ligouri Email to Plaintiffs, Response Exh. K, docket #30-11.

36. An Amended Policy Coverage Summary dated October 15, 2014 reflects that Vincent Armstrong was added as a "rated driver" of the Saturn.  USP Package Amended Policy Coverage Summary, October 15, 2014, Response Exh. L, docket #30-12.  It also lists the Saturn and Corvette as covered vehicles.  *Id.*

37. On October 22, 2014, James Beckwith, Esq. (Plaintiffs' counsel) responded to Mr. Holmes' letter, requesting specification of each and every incident, act or statement alleged by Encompass to have been fraudulently uttered or concealed by Plaintiffs. Beckwith Letter to Holmes, Complaint

Exh. 15, docket #1-1 at 39-40.

38.     On November 12, 2014, Mr. Holmes issued a letter to Mr. Beckwith seeking production of various documents at the EUOs scheduled for November 17, 2014. Holmes Letter to Beckwith, Complaint Exh. 16, docket #1-1 at 41-43.

39.     On November 13, 2014, Mr. Beckwith emailed Mr. Holmes notifying him that Plaintiffs withdrew their claim on the Saturn saying "[a] vehicle of that age, which is no longer made, is worth more in parts than as a whole vehicle." Beckwith Email to Holmes, Complaint Exh. 17, docket #1-1 at 44.

40.     On November 25, 2014, Plaintiffs, acting by and through their counsel, responded to Defendant's Request for Production of Documents. Beckwith Letter to Holmes, Complaint, Exh. 18, Docket #1-1 at 45-48.

41.     Plaintiffs submitted thirteen claims under their Encompass policy between January 2, 2013 and September 15, 2014, including six claims for towing, four claims for comprehensive damage on windshields due to hail or being struck by an object, three claims for road incidents, and one for burglary/theft of jewelry. Claim Inquiry, Response Exh. M, docket #30-13.

42.     Plaintiffs added, deleted, or replaced approximately 17 vehicles on their policy between October 12, 2012 and September 23, 2014. Encompass CSR Policy History, Response, Exh. B, docket #30-2.

43.     Encompass has not paid the remaining amount of the total loss settlement for the Corvette to the Plaintiffs.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required.

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in

Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

The Plaintiffs' sole claim against Encompass is for the unreasonable denial or delay of the payment of benefits pursuant to Colo. Rev. Stat. § 10-3-1115 and § 10-3-1116. Complaint, docket #3 at 5. Specifically, Plaintiffs claim Encompass has unreasonably denied or delayed payment to them of the remaining portion of the $25,500.00 total loss settlement for the Corvette in the amount of $14,315.26.

Under the plain language of section 1115, a claimant is required to prove that payment of an insurance covered benefit was unreasonably delayed or denied. *Hansen v. American Family Mut. Ins. Co.*, -- P.3d --, 2013 WL 6673066, at *9 (Colo. App. Dec. 19, 2013). An insurer's duty not to unreasonably deny or delay payment "would be breached if the insurer had no 'reasonable basis' to delay or deny the claim for benefits." *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 974 (Colo. App. 2011) (citing Colo. Rev. Stat. § 10-13-1115(2)).

For their motion, the Plaintiffs must demonstrate there are no genuine issues of material fact as to whether Encompass unreasonably denied or delayed payment of the total loss settlement for

the Corvette. Here, Plaintiffs provided documents and evidence showing that the Corvette was insured by Encompass; Encompass acknowledged Plaintiffs' claim for benefits following the August 16, 2014 collision; Encompass found the Corvette was a "total loss" and applied the stated value of $26,000, minus the $500 deductible, to come to a total loss settlement of $25,500; Encompass paid off the lien on the Corvette in the amount of $11,184.74 on September 17, 2014; and Encompass has not paid the remainder of the total loss settlement of $14,315.26 to the Plaintiffs. The Court finds the Plaintiffs have met their initial burden.[2]

Next, Encompass must show triable issues of fact as to whether it had a reasonable basis on which to deny or delay payment of the total loss settlement for the Corvette. The Court finds that Encompass has made the proper showing. Specifically, a reasonable juror could find that Encompass' decision to delay[3] payment of the total loss settlement was reasonable in order to continue and complete its investigation into any fraud or misrepresentation by the Plaintiffs, based on resolution of the following disputed facts: whether the Plaintiffs simply "got a good deal" with their purchase of the Corvette (*see* Finding of Fact (4)); whether the Corvette's collision occurred as stated by the Plaintiffs (*compare* Findings of Fact (8) and (14)); whether the Plaintiffs correctly reported the driver status for the Saturn (*compare* Findings of Fact (21), (32) and (36)); whether Encompass' belief that the Saturn and Corvette were purchased in Florida is correct (*see* Findings

---

[2]In so concluding, the Court makes no findings as to Plaintiffs' arguments regarding whether the total loss settlement constitutes a contract under the common law, and whether Plaintiffs had a "duty" to submit to the EUOs or whether there was a "breach" of the policy in that regard. Here, the only question to be determined is whether Encompass unreasonably denied or delayed payment of a covered benefit to the Plaintiffs pursuant to the applicable Colorado statutes, and the Plaintiffs do not explain how their "contract" arguments apply to their claim.

[3]There is nothing in the record reflecting that Encompass has yet "denied" payment of the subject benefit.

of Fact (29)); whether it was a coincidence that the Saturn and Corvette accidents occurred within one month of each other (*see* Findings of Fact (8) and (19)); whether Plaintiffs withdrew the Saturn claim based solely on economic reasons (*see* Findings of Fact (39)); whether Plaintiffs' claim history raises suspicion (*see* Findings of Fact (41) and (42)); and whether Plaintiffs reasonably declined to participate in the EUOs.

The Court finds that resolution of these issues by a factfinder is material to the determination of whether Encompass has violated Colo. Rev. Stat. §§10-3-1115 and -1116.  Consequently, the Court must deny summary judgment in favor of the Plaintiffs at this early stage of the litigation and allow discovery to proceed as to the stated genuine issues of fact (and to any others that may arise during the course of the litigation).

## **CONCLUSION**

Accordingly, the Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [filed February 11, 2015; docket #23] is **DENIED**.

Entered and dated at Denver, Colorado, this 24th day of March, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge